UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHANNES HUWYLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMCO INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 14-cv-02350-WHO<br><br>**ORDER GRANTING DEFEDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 17 |

Johannes Huwyler obtained insurance for his general automotive repair service and garage from AMCO. He performed a pre-purchase car inspection and report that was later found deficient and led to the underlying litigation. Because the exclusion in Huwyler's policy for "a test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured" applies to Huwyler's demand for coverage, I GRANT defendant's motion for summary judgment.

## BACKGROUND

The incidents underlying this insurance coverage action stem from an agreement between Anthony Greenberg and plaintiff Johannes Huwyler requiring Huwyler to inspect and prepare a pre-purchase inspection report to help Greenberg determine whether to purchase a 1972 Ferrari 365 GTC/4. *See* Plaintiff's Complaint filed in *Johannes Huwyler v. AMCO Insurance Company*, San Francisco Superior Court Case No. CGC-14-537788 ("Complaint"), ¶ 12.[1] After Huwyler

---

[1] Huwyler objects in part to AMCO's Request for Judicial Notice of the Greenberg Complaints filed in Los Angeles County and filed in San Mateo County, as well as the Complaint in this case filed in San Francisco Superior Court. Oppo. at 10-13. Huwyler is correct that the Court may take judicial notice of the Los Angeles and San Mateo Complaints for the purpose of noticing the claims alleged, but not for the truth of the facts asserted in those complaints. However, I may rely on both the facts and statements alleged in the Complaint in *this* case, as well as the exhibits attached to the Complaint, because they are admissions. *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (Allegations "in a complaint are considered judicial admissions").

inspected the Ferrari and gave his report to Greenberg in June 2006, Greenberg purchased the Ferrari and had Huwyler work on the car. *Id.* ¶ 14. In May 2009, the Ferrari was delivered and Greenberg discovered the Ferrari had damage to the engine "that a reasonable pre-inspection should have revealed." *Id.* ¶ 15. In 2010, Greenberg filed suit in Los Angeles County against Huwyler ("Los Angeles Complaint"). *Id.* ¶ 7. Pursuant to the stipulation, the Los Angeles County case was dismissed and refiled in San Mateo County in March 2011 ("San Mateo Complaint"). *Id.* ¶ 8.

Both the Los Angeles and San Mateo Complaints alleged causes of action for breach of contract, negligence, negligent misrepresentation, and unfair business competition based on allegations that Huwyler's report failed to warn Greenberg of visible patches on the engine and negligently failed to report on engine operating problems that should have been disclosed. Los Angeles Complaint ¶ 12, Ex. A to Complaint; San Mateo Complaint ¶ 12, AMCO's Request for Judicial Notice, Ex. 2.[2] The case went to arbitration and in October 2011 and Greenberg was awarded $106,446.67 ($27,363 in repairs for the engine defect and $79,000 in lost use damages). Complaint ¶ 19 & Ex B (Arbitration award).

Defendant AMCO insured Johannes Huwyler d.b.a. Dino Motors, under a Premier Businessowners Policy for Huwyler's "general automotive repair" business. Complaint, Ex. C. Under the "Premier Businessowners Liability Coverage Form," paragraph 1A.2., there is an exclusion from the Policy for:

> **w. Testing, Evaluating or Consulting**
>
> "Bodily injury" or "property damage" arising out of:
>
> 1) An error, omission, defect or deficiency:
>
>> a) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or
>> …
>
> 2) The reporting or reliance upon any such test, evaluation, consultation or advice.

---

[2] The Complaints also raised claims regarding Huwyler's alleged failure to be properly licensed, but that allegation and the related claims are not at issue in this action.

    fitness, quality, durability, performance or use of "your product"; and

Policy, pg. 9.

    Paragraphs 20 & 21 of the Policy provide:

    20. "Your product" means:

        a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            1) You;

…

    "Your product" includes:

        a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        b. The providing of or failure to provide warnings or instructions.

…

    21. "Your work" means:

        a. Work or operations performed by you or on your behalf; and

        b. Materials, parts or equipment furnished in connection with such work or operations.

    "Your work" includes:

        a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        b. The providing of or failure to provide warnings or instructions.

Policy, pg. 24.

    The Policy's "Auto Services Risks – Garage Liability" endorsement defines "garage operations" that are covered to mean "the ownership, maintenance or use of premises for the purpose of a business servicing, repairing, parking or storing 'customer's autos'. 'Garage operations' also includes all operations necessary or incidental to the performance of garage operations."  The Policy's "Garagekeepers Coverage" endorsement provides coverage for "loss" to a customer's auto (or auto equipment) left in the insured's care while the insured is "attending,

3

servicing, repairing, parking or storing" the auto. Excluded from that endorsement is "faulty work" defined as "Faulty 'work you performed.'" Under the "Auto Service Risks – Broadened Garage Liability (Defective Products and Faulty Work)" endorsement, certain exclusions are amended (including j. for damage to property and l. for damage to your work). "Garage operations" is again defined as the "ownership, maintenance or use of premises for the purpose of a business of servicing, repairing, parking or storing 'customer's autos'. 'Garage operations' also includes all operations necessary or incidental to the performance of garage operations."

In December 2009, March 2010, May 2010, April 2011, and May 2011, Huwyler tendered the defense of the action to AMCO. *Id*. ¶ 11. AMCO denied coverage, relying on exclusion w. for "testing, evaluating or consulting." *See* Declaration of David Washburn [Docket No. 18] and Ex. A (September 24, 2009 letter); Declaration of Wendy Kehney [Docket No. 19] and Ex. A (May 25, 2010 letter).[3]

On March 4, 2014, Huwyler filed this action in Superior Court for County of San Francisco, asserting causes of action for: (i) declaratory relief on right to garnish policy to enforce judgment, (ii) breach of insurance contract, (iii) breach of covenant of good faith; and (iv) action on a judgment to compel payments. Complaint, Docket No. 4. AMCO moves for summary judgment, arguing that its insurance policy does not cover claims based on "testing, evaluating or consulting" performed by the insured and, therefore, there is no coverage for the inspection and pre-purchase report performed for Greenberg.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however,

---

[3] Huwyler objects to the Court's consideration of the Washburn and Kehney letters (the denial letters), as those letters contain "objectionable and inadmissible hearsay and opinion." Oppo. at 10. However, the Court will consider those letters as relevant evidence of defendant's denial of coverage and relevant evidence of defendant's investigation into and consideration of plaintiff's claim.

has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Id*. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I. BREACH OF CONTRACT**

Interpretation of an insurance policy is a question of law. *Powerine Oil Co. v. Superior Court*, 37 Cal.4th 377, 390 (2005). Insurance contracts are contracts to which the ordinary rules of contractual interpretation apply. *Id*. If contractual language is clear and explicit, it governs. *Id*.

### A. Scope of Coverage for Greenberg Judgment

AMCO argues that the service Huwyler provided to Greenberg – the pre-purchase inspection and report that led to the underlying lawsuit – was expressly excluded from coverage under exclusion w. as "a test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured." I agree.

The pre-purchase inspection and report are covered by exclusion w. The Los Angeles and San Mateo Complaints that resulted in the arbitration award were based on Huwyler's alleged negligence in performing the pre-purchase inspection and report, *not* on any servicing or repair of the Ferrari performed by Huwyler. *See* Complaint, Ex. B (Arbitration Award). The Policy here covered "garage operations," defined by the "Auto Services Risks – Garage Liability" endorsement, as "the ownership, maintenance or use of premises for the purpose of a business servicing, repairing, parking or storing 'customer's autos'. 'Garage operations' also includes all operations necessary or incidental to the performance of garage operations." On the face of the policy, work *not* in connection with servicing or repairing cars (and the parking and storing related thereto) is not covered.

Huwyler initially argues that pre-purchase inspections are warranties – covered by the definition of "product" and "work" as defined by the Policy. *See* Policy ¶¶ 20 & 21 at pg. 24 (defining "Your Product" to include warranties regarding fitness, quality, durability, performance or use of "your product"). But there is no support to find that the "work" or "product" of the pre-purchase inspection and report is included within the scope of "garage operations," which is limited by its express terms to "servicing, repairing, parking or storing."

Huwyler next asserts that the pre-purchase inspection was included as "necessary or incidental" to his "garage operations" because *his* business when he obtained the Policy was "repair, restoration, and inspection services." Huwyler Decl. ¶ 7 [Docket No. 27-5]. He contends that he told AMCO's agent about the actual scope of his business and the services he provides when he secured the Policy, and he assumed the Policy would cover all these aspects of his business. *Id*. ¶¶ 7, 8. Huwyler asserts that inspections are a "necessary" component of both his business and "garage operations" in general, because he "must" inspect a car before being able to

6

give a customer an estimate for servicing/repairs, as required by the State Bureau of Automotive Repairs. *Id*. ¶ 9.

Inspections in order to give a customer a service or repair quote – which may indeed be a "necessary" part of garage operations defined as servicing and repairing autos – are different than pre-purchase inspections and reports. Huwyler does not provide testimony or other evidence to show that pre-purchase inspection reports are "necessary" to his or other peoples' garage operations. The "Auto Services Risks – Garage Liability" endorsement, therefore, does not vitiate or make ambiguous exclusion w.[4]

Finally, Huwyler argues that because the "Auto Services Risks –Broadening Endorsement" amended some of the exclusions, exclusion w. cannot prevent coverage here. However, the Broadening Endorsement amended *only* exclusions j. (for damage to property) and l. (for damage to "your work"). As an initial matter, exclusion w. was not amended by this endorsement. More importantly, as noted above, the "your work" definition was limited by the "garage operations" definition. Therefore, the broadening of coverage for "your work" does not stretch that term to include the pre-purchase inspection and report excluded by w.

AMCO's policy does not cover the Greenberg judgment.

**B. Duty to Defend**

Huwyler argues that given all of the facts that AMCO should have known or discovered about the dealings between Greenberg and Huwyler, there was a duty to defend. An insurer's duty to defend extends to a suit which "potentially" seeks damages within the coverage of the policy. *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). Whether a duty to defend arises is determined by "'comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy facts known by the insurer at the inception

---

[4] Huwyler also argues that the "Garagekeepers" endorsement – which like the Auto Services Risks" endorsement defines "garage operations" and includes "all operations necessary or incidental to the performance of garage operations" –conflicts with or creates an ambiguity with exclusion w., because pre-purchase inspections are an operation "necessary or incidental" to Huwyler's performance of garage operations. Oppo. at 20-21. For the same reasons discussed with respect to the Auto Services Risk endorsement, this argument fails.

7

of a third party lawsuit.'" *Id.* at 295 (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076 (1993)); *see also Gauntlett v. Illinois Union Ins. Co.*, 2012 U.S. Dist. LEXIS 131086, 2012 WL 4051218 at *6 (N.D. Cal. Sept. 13, 2012) ("Whether coverage exists does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy.").

Huwyler does not point to any facts included in the Los Angeles or San Mateo Complaints as triggering AMCO's duty to defend, but points to AMCO's September 23, 2010 coverage denial letter. In that letter, AMCO discussed a July 2, 2009 report by Lance Coren of The Ferrari Appraiser, who was hired by Greenberg, where Coren concluded that there "had been an engine failure which, if disclosed, would have either resulted in a reduced negotiated purchase price or Mr. Greenberg not buying the vehicle at all. The engine will now require major work as a result of its pre-purchase condition." Declaration of Dennis C. Birkhimer, Ex. B.[5]

To support his argument that a duty to defend arose based on extrinsic facts, Huwyler relies on *another* section of the Coren report. During his 2009 inspection, Coren noticed the rubber engine mounts were broken, which suggested to Coren that when Huwyler performed work on the motor in 2007 and 2008, Huwyler created a "dangerous condition" with respect to the rubber mounts, and should have notified Greenberg so that he could have authorized their replacement. Declaration of Lance Coren [Docket No. 27-7], Ex. B at pg.4.

Huwyler argues that because Greenberg *could* have added an allegation to his state court complaints that Huwyler failed to warn Greenberg of the dangerous condition on the engine mounts, coverage was implicated and the duty to defend arose. *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276-277 (1966) ("the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy."). Huwyler argues that the "physical damages indicated in the Coren Report should have put AMCO on notice that the Greenberg claim involved more than just investigatory work, but

---

[5] The Coren report was not mentioned in the Los Angeles Complaint, so AMCO presumably uncovered it as part of its coverage investigation.

actual work on the vehicle itself, which manifested itself in damage to the vehicle that had to be repaired." Oppo. at 6; *see also* at 8 (arguing that AMCO was on notice and could have discussed the damage to the rubber mounts with Coren but declined to do so, but had they done so, would have discovered the "physical damage" caused by Huwyler's work).

However, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (Cal. App. 1995). The touchstone is what has been alleged in the complaint, the facts reasonably known to the insurer at the inception of the case, and "whether these known facts created a potential for coverage under the terms of the Policy." *Id*. Here, while AMCO knew about the Coren report and presumably the issue with the rubber engine mounts in 2010, that knowledge did *not* trigger AMCO's duty to defend because the issue with the rubber mounts was not a "loss" covered by the Policy.[6]

According to the Coren report, it is "logical" that the damage to the rubber mounts was caused by the work on the engine by Huwyler in 2007 or 2008, which Huwyler was authorized to do. Coren Report at 4. Coren does not imply that the rubber mounts were carelessly or needlessly broken by Huwyler when he worked on the engine; instead that the broken mounts were the result of Huwyler's authorized work. As such, and as Cohen notes, at most Huwyler should have given Greenberg *notice* of the need to replace the rubber mounts (which presumably Greenberg would have had to pay Huwyler to do) in order for Greenberg to approve the "elimination" of the dangerous condition. In other words, Greenberg would have had to pay to repair the rubber mounts either at that time, or a later time. Because Greenberg discovered the issue with the mounts before he was damaged by their "dangerous condition," the mounts could not have been a "loss" under the Policy.

Therefore, even if AMCO was on notice of the rubber mounts issue from the Coren report, Huwyler has not presented evidence that the broken rubber mounts represented a "loss" under the

---

[6] There is no evidence that the issue of the rubber mounts was discussed in or was part of the judgment in the arbitration.

9

1  Policy.  Summary judgment on the duty to defend is GRANTED to AMCO.[7]

## II. *BRANDT* FEES

AMCO moves for summary judgment on Huwyler's third cause of action for Brandt fees, which are fees reasonably incurred by an insured to compel payment of insurance benefits when an insured tortuously withholds benefits.  *See Brandt v. Superior Court*, 37 Cal. 3d 813 (1985).

Plaintiff does not address this argument in his opposition.  In any event, because I conclude that AMCO has no liability to Huwyler, summary judgment is granted to AMCO on this claim.

## III. RIGHT TO GARNISH POLICY

AMCO moves for summary judgment on Huwyler's first cause of action for declaratory relief of a "right to garnish AMCO's policy."  As I have determined that AMCO is not liable to Huwyler on for the Greenberg judgment, summary judgment is granted to AMCO on this claim as well.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: September 16, 2014



WILLIAM H. ORRICK
United States District Judge

---

[7] Huwyler also argues that because "physical work" was performed on the Ferrari around the time of the pre-purchase inspection, "how is it possible to tell determine where the inspection ended and the repair commenced?"  Oppo. at 9.  However, there is no evidence in the record – from Huwyler who could supply it – that he started on "repairs" to the Ferrari before he submitted the pre-inspection report and, presumably, before Greenberg bought it.